1  **PROSPER LAW GROUP, LLP**
   Gordon F. Dickson, Esq. SBN 136857
2  Deborah P. Gutierrez, Esq. SBN. 240383
   5301 Beethoven Blvd., Suite 109
3  Los Angeles, California 90066
   Telephone:  (310) 893-6200
4  Facsimile:   (310) 988-2930

5

6  Attorneys for Plaintiffs,
   Billi Vogan and Harold Traupel

7

8

9

10                 **UNITED STATES DISTRICT COURT**

11             **EASTERN DISTRICT OF CALIFORNIA**

12

13  BILLI VOGAN, an individual, and          **Case No.** _____
    HAROLD TRAUPEL, an individual,
14                                           **VERIFIED COMPLAINT FOR:**
                  Plaintiffs,
15                                                1. **DECLARATORY RELIEF**
                  vs.                             2. **NEGLIGENCE**
16                                                3. **QUASI CONTRACT**
    WELLS FARGO BANK, N.A. D/B/A                  4. **VIOLATION OF CALIFORNIA**
17  WELLS FARGO HOME MORTGAGE;                       **BUSINESS AND**
    U.S. BANKCORP D/B/A U.S. BANK,                   **PROFESSIONS CODE**
18  NATIONAL ASSOCIAITON, AS                         **SECTION 17200, ET SEQ.**
    TRUSTEE FOR WFMBS 2005-AR12;                  5. **VIOLATION OF 15 U.S.C.**
19  FIRST AMERICAN TRUSTEE                           **1641(g)**
    SERVICING SOLUTIONS, LLC F/K/A                6. **ACCOUNTING**
20  FIRST AMERICAN LOANSTAR                        7. **CONSTRUCTIVE TRUST**
    TRUSTEE SERVICES, LLC; and Does 1             8. **WRONGFUL FORECLOSURE**
21  – 10, inclusive,                                 **AND TO SET ASIDE**
                                                     **TRUSTEE'S SALE**
22                                                9. **TO VOID OR CANCEL**
                  Defendants.                        **TRUSTEE'S DEED UPON**
23                                                   **SALE**
                                                 10. **QUIET TITLE**
24

25

26                                           **DEMAND FOR JURY TRIAL**

27

28

───────────────────────────────────────────────
VERIFIED COMPLAINT                                                    -1-

# TABLE OF CONTENTS

**I.** STATEMENT OF THE CASE..................................................................3

**II.** JURISDICTION, VENUE, AND PARTIES..................................................3

**III.** INTRODUCTION.............................................................................5

**IV.** THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN THAT CONVEYED NO INTEREST TO U.S. BANK..............................................10

**V.** THE FABRICATED SUBSTITUTION OF TRUSTEE IS A FRAUDULENT DOCUMENT THAT CONVEYED NO AUTHORITY TO FIRST AMERICAN TO ACT AS THE FORECLOSING TRUSTEE.......................................................................13

**VI.** PLAINTIFFS' OFFERS TO TENDER.....................................................15

**VII.** PLAINTIFFS HAVE SUFFERED, AND CONTINUE TO SUFFER, SIGNIFICANT, MONETARY, LEGAL, AND EQUITABLE DAMAGES....................................16

**VIII.** FIRST CAUSE OF ACTION - DECLARATORY RELIEF...............................18

**IX.** SECOND CAUSE OF ACTION - NEGLIGENCE..........................................19

**X.** THIRD CAUSE OF ACTION - QUASI CONTRACT.......................................21

**XI.** FOURTH CAUSE OF ACTION - BUS. & PROF. CODE § 17200, ET SEQ...................22

**XII.** FIFTH CAUSE OF ACTION - VIOLATION OF 15 U.S.C. 1641(g)..........................24

**XIII.** SIXTH CAUSE OF ACTION - ACCOUNTING............................................27

**XIV.** SEVENTH CAUSE OF ACTION - CONSTRUCTIVE TRUST.............................28

**XV.** EIGHTH CAUSE OF ACTION - WRONGFUL FORECLOSURE AND TO SET ASIDE TRUSTEE'S SALE ...........................................................................28

**XVI.** NINTH CAUSE OF ACTION – TO VOID OR CANCEL TRUSTEE'S DEED UPON SALE.................................................................................31

**XVII.** TENTH CAUSE OF ACTION - QUIET TITLE...........................................32

# COMPLAINT

COMES NOW Plaintiffs Billi Vogan and Harold Traupel ("Plaintiffs" or "Ms. Vogan and Mr. Traupel"), by and through their counsel, for their Complaint against Defendants, Wells Fargo Bank, N.A. D/B/A (in its capacity as originating lender and purported mortgage servicer) (hereinafter "Wells Fargo"); U.S. Bancorp d/b/a U.S. Bank, National Association, as Trustee for WFMBS 2005-AR12 (in its capacity as purported assignee of Plaintiffs' Deed of Trust) (hereinafter "U.S. Bank"); and First American Trustee Servicing Solutions, LLC F/K/A First American Loanstar Trustee Services, LLC (in its capacity as foreclosing trustee) (hereinafter "First American"), (collectively "Defendants"), plead as follows:

## I.   STATEMENT OF THE CASE

1.   Plaintiffs allege that Defendants are third-party strangers to their mortgage loan and have no ownership interest entitling them to collect payment or declare a default.  By hiding behind the complexities of the mortgage finance system, Defendants brazenly attempt to dupe Plaintiffs (and millions of other American homeowners) into believing that they have the right to collect on a debt in which U.S. Bank has no ownership interest.  In an attempt to further their fraudulent scheme and create the air of propriety surrounding their debt collection efforts, Defendants have resorted to "papering the file" by fabricating an "Assignment of Deed of Trust," employing robo-signors who have no authority or personal knowledge of the facts to which they attest, and falsely representing to Plaintiffs and *to the Court* that they have the right to take Plaintiffs' property away.  Not only is Defendants' conduct a *criminal violation* of California's Mortgage Fraud Statute, Cal. Penal Code 532(f)(a)(4)[1], and an affront to long-standing property laws, but its reliance on fabricated and forged documents undermines the integrity of the non-judicial foreclosure process and the

---

[1] Cal. Penal Code Section 532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following… (4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

1  judiciary.  Through this action, Plaintiffs seek to stop Defendants' fraudulent practices

2  and demand that the identity of their true creditor be revealed.

3  **II.    JURISDICTION, VENUE, AND PARTIES**

4      2.    This Court has original jurisdiction over the claims in this action based

5  on 28 U.S.C. §§ 1331, 1332, 1343, and 42 U.S.C. §1983 which confer original

6  jurisdiction on federal district courts in suits to address the deprivation of rights

7  secured by federal law and matters between diverse citizens that involve an amount in

8  controversy in excess of $75,000.00.  This Court also has supplemental jurisdiction

9  over the pendant state law claims because they form a part of the same case or

10  controversy under Article III of the United States Constitution, pursuant to 28 U.S.C.

11  §1367.

12      3.    The unlawful conduct, illegal practices, and acts complained of and

13  alleged in this Complaint were all committed in the Central District of California and

14  the involved real property located in the Central District of California.  Therefore,

15  venue properly lies in this District, pursuant to 12 U.S.C. §2614 and 28 U.S.C.

16  §1391(b).

17      4.    Plaintiffs are now, and at all times mentioned herein, individuals residing

18  in the County of Nevada.  At all times relevant to this action, Plaintiffs have owned

19  real property commonly known as 20066 Wildwood West Drive, Penn Valley,

20  California 95946 (the "Property").  Further described as Assessor's Parcel Number

21  50-340-17-000, with the following legal description:

22
23      PARCEL 3, AS SHOWN ON MAP NO. 90-75, BEING A PORTION OF LOT
        4 OF PARCEL MAPS 13, PAGE 29, WITHIN THE SE ¼ OF SECTION 19,
24      16N, R. 73, M.D.M., IN THE UNINCORPORATED AREA OF THE
        COUNTY OF NEVADA, CALIFORNIA, RECORDED DECEMBER 9, 1996,
25      IN BOOK 18 OF PARCEL MAPS, PAGE 313. SAID LAND IS ALSO
        SHOWN ON THE MAP FILED FOR RECORD MAY 17, 2001 IN BOOK 12
26      OF SURVEYS AT PAGE 259.

27      5.    At all relevant times, Wells Fargo Bank, N.A. D/B/A Wells Fargo Home

28  Mortgage ("Wells Fargo"), a National Association with its principal place of business

in South Dakota, has transacted and continues to transact business throughout the

VERIFIED COMPLAINT                                                          -4-

State of California, including in Nevada County.

6.    At all relevant times, U.S. Bank, National Association, as Trustee for the WFMBS 2005-AR12, a National Association with its principal place of business in Minneapolis, has transacted and continues to transact business throughout the State of California, including in Nevada County.

7.    At all relevant times, First American Trustee Servicing Solutions F/K/A First American Loanstar Trustee Services, LLC ("First American"), a Texas limited liability company, has transacted business throughout the State of California, including in Nevada County.

8.    Plaintiffs are ignorant of the true identity and capacity of defendants designated as Does 1-100, but will amend the Complaint when their identities have been ascertained according to proof at the time of trial.  Plaintiffs allege on information and belief, however, that each and every Doe Defendant is in some manner responsible for the acts, and conduct of the other defendants, and were, and are responsible for the injuries, damages, and harm, incurred by Plaintiffs.  Plaintiffs further allege on information and belief that each such designated defendant acted, and acts, as the authorized agent, representative, and associate of the other defendants in doing the things alleged herein.

9.    Whenever reference is made in this Complaint to any act of any defendant(s), that allegation shall mean that each defendant acted individually and jointly with the other defendants.

10.    Any allegation about acts of any corporate or other business defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

11.    At all relevant times, each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint.  Additionally, some or all of the defendants acted as the agent of the

1   other defendants, and all of the defendants acted within the scope of their agency if

2   acting as an agent of the other.

3        12.    At all relevant times, each defendant knew or realized that the other

4   defendants were engaging in or planned to engage in the violations of law alleged in

5   this Complaint.  Knowing or realizing that the other defendants were engaging in or

6   planning to engage in unlawful conduct, each defendant nevertheless facilitated the

7   commission of those unlawful acts.  Each defendant intended to and did encourage,

8   facilitate, or assist in the commission of the unlawful acts, and thereby aided and

9   abetted the other defendants in the unlawful conduct.

10   **III.   INTRODUCTION**

11        13.    During the Mortgage Boom Era of 2002 to 2007, Wall Street investors

12   looked to feed their insatiable and reckless greed for profit by tapping directly into the

13   American Dream – homeownership.  Mortgage lenders and Investment Banks

14   aggressively lured the American people into predatory loans with teaser interest rates

15   and into purchasing homes with inflated appraisals and under the promise that the

16   booming real estate market would continue to boom.  Wall Street took the soon to be

17   toxic loans and bundled them into "Mortgage Backed Securities" through a process

18   known as "Securitization".  These securities were then sold to investors in the form of

19   certificates, whereby the investors became the "Certificateholders" of the securities

20   that were to be fed by the toxic loans.

21        14.    Knowing that the predatory loans would soon default and turn into toxic

22   assets, Wall Street placed their bets accordingly and bought exotic insurance products

23   in the form of Credit Default Swaps.  Thus, when the Mortgage Boom turned into a

24   Mortgage Meltdown (which it did), they would stand to make even more profit when

25   the mortgage insurance paid them out for their "losses".

26        15.    However, in their rush to "securitize" the predatory loans, Wall Street

27   failed to actually follow its own rules and regulations, creating the instant situation

28   where the security is not actually backed by any mortgages at all.  Under the standard

VERIFIED COMPLAINT                           -6-

model, the promissory notes were *supposed* to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificateholders"). These "true sales" allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against default. The purpose of securitizing collateral debt obligations was to provide a large supply of money to lenders for originating loans, and to provide investment to bond holders – which were expected to be relatively safe.

16.    The Securitized Trusts, if ever formed properly, are subject to and governed by (1) the Pooling and Servicing Agreement; (2) the Mortgage and Loan Purchase Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of Delaware or New York, depending on its origin, and (5) Internal Revenue Code § 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

17.    An essential aspect of the mortgage securitization process is that the Trust must obtain good title to the mortgage loans comprising the pool for that certificate offering. This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in case of default. In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process – the promissory note and the security instrument (deed of trust or mortgage). [2] In this case, on information and belief, neither document was validly transferred.

---

[2] Plaintiffs' allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in *Deutsche vs. Ibanez*, SJC-10694, 2011 WL 38071. In *Ibanez*, the Court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by the Plaintiffs failed to demonstrate that they were the holders of the mortgages. The Court rejected the banks' argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the mortgage.

18.     Here, Plaintiffs allege that the "true sales" never took place due to the failure to follow the basic legal requirements for the transfer of a negotiable instrument and thereby, the legal, equitable, and pecuniary interest in Ms. Vogan and Mr. Traupel's Note and Mortgage.  As a result thereof, U.S. Bank, which purports to be Ms. Vogan and Mr. Traupel's creditor, actually has no right, title, or interest in Ms. Vogan and Mr. Traupel's Note and Mortgage, and has no right to collect mortgage payments, demand mortgage payments, report derogatorily against Ms. Vogan and Mr. Traupel's credit, or foreclose on their Property.

19.     Plaintiffs further allege that, on information and belief, the Trust that purportedly owns Plaintiffs' Note and Mortgage has been dismantled due to the disbursement and receipt of mortgage insurance payouts to U.S. Bank and the Certificateholders (including, but not limited to, credit default swaps and other mortgage insurance products).  As a result of these mortgage insurance payouts, U.S. Bank has been paid in full on Plaintiffs' debt obligation.

20.     Nonetheless, U.S. Bank attempts to take advantage of the complex structured finance system to defraud yet another homeowner who has sought for over a year to come to a financial arrangement with their true creditor and avoid the possibility of double financial jeopardy.  Having already benefitted from an American taxpayer bailout of unprecedented proportions, U.S. Bank will seek a Court-sanctioned bailout by submitting a blatantly fabricated "Assignment", thereby committing fraud on the Court, and misleading the Plaintiffs into believing that U.S. Bank was their actual creditor and was entitled to foreclose on their home.

21.     Plaintiffs do not dispute that they owed money on their mortgage obligation.  However, simply because they do not dispute this fact, the Court should not condone U.S. Bank's fraudulent and predatory mortgage servicing practices and allow it to collect on money it was not owed.  Simply put, the Court should not allow U.S. Bank to trample over 200 years of well-settled property laws just because Plaintiffs "owed somebody the money".

22.    Plaintiffs' information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; and (3) their counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available securitization documents & practices; (4) a review of the purported "Assignment of Deed of Trust" signed by Robert Bourne; and (5) U.S. Bank's filings with the Securities and Exchange Commission ("SEC"), including U.S. Bank's 424B5 Prospectus and Pooling and Servicing Agreement ("PSA").  A true and correct copy of the unexecuted PSA is located at: http://www.secinfo.com/d14D5a.z3R58.htm.

23.    On or about June 24, 2004, Ms. Vogan and Mr. Traupel executed a Note and Mortgage in favor of Wells Fargo, obtaining a loan on the Property.  Ms. Vogan and Mr. Traupel were told that the house was worth approximately $470,000.00. Today, the Property is valued at approximately $350,000.00.  The dramatic drop in value over such a short period of time strongly suggests that mortgage lenders encouraged appraisers to inflate home values so that lenders could feed the secondary mortgage market and profit mightily with no risk.

24.    Plaintiffs allege and believe thereon that on or around the time of origination of Ms. Vogan and Mr. Traupel's loan, Wells Fargo attempted to securitize and sell their loan to another entity or entities.  **That entity was *not* U.S. Bank**.

25.    Plaintiffs allege on information and belief that Wells Fargo never sold their Mortgage to U.S. Bank, and that U.S. Bank is merely a third-party stranger to the loan transaction.  Furthermore, Plaintiffs allege that none of the Defendants or Doe Defendants can demonstrate or document that Plaintiffs' Note was ever properly endorsed, and transferred to U.S. Bank.  In fact, Plaintiffs have requested that Wells Fargo Home Mortgage (hereinafter "Wells Home") (in its capacity as purported mortgage servicer) provide evidence establishing the true and correct owner of their loan.  Although this information should be readily available to any mortgage servicer,

1  Wells Home has failed to provide any evidence verifying the owner of Plaintiffs'

2  Mortgage.

3       26.    The parties involved in the purported Securitization and transfer of

4  Plaintiffs' Note and Mortgage failed to strictly adhere to section 2.01 of the PSA,

5  which requires that Plaintiffs' Note and Mortgage be properly endorsed, transferred,

6  accepted, and deposited with the Securitized Trust (hereinafter "WFMBS Trust") (or

7  its custodian) on or before June 16, 2005, the "closing date" indicated on the PSA.

8  The "closing date" is the date by which all of the Notes and Mortgages must

9  transferred into the Trust.  The failure to do so results in the Note and Mortgage not

10  being part of the WFMBS Trust res.

11       27.    The failure to deposit the Note into the WFMBS Trust before the closing

12  date is a violation of the PSA and of New York trust law.  Consequently, the WFMBS

13  Trust cannot claim any legal or equitable right, title, or interest in Ms. Vogan and Mr.

14  Traupel's Note and Mortgage since the U.S. Bank cannot take any action which is not

15  authorized by the Securitization agreements that created and govern the WFMBS

16  Trust.

17       28.    Ms. Vogan and Mr. Traupel relied on Wells Fargo's misrepresentations

18  and have been damaged in the following ways: (1) they have been paying the wrong

19  party for an undetermined amount of time and overpaid in interest that was

20  overcalculated; (2) they have suffered damage to their credit; (3) the title to Ms.

21  Vogan and Mr. Traupel's home has been lost through a wrongful foreclosure; (4)

22  Plaintiffs are facing imminent eviction from their home; (5) Ms. Vogan and Mr.

23  Traupel have expended significant funds to cover the cost of attorneys' fees and

24  related costs; (6) they have suffered damage to their reputation in the community; (7)

25  are unable to determine whether they sent their monthly mortgage payments to the

26  right party; (8) multiple parties may seek to enforce their debt obligation against them;

27  and (9) any would-be buyer of Plaintiffs' home will find themselves in legal limbo,

28

1  unable to know with any certainty whether they can safely buy Plaintiffs' home or get

2  title insurance.

3       29.   In addition to seeking compensatory, consequential, punitive, and other

4  damages, Plaintiffs seek an Order Setting Aside the Trustee's Sale, Declaratory Relief

5  as to whether the Deed of Trust (Mortgage) secured any obligation of Plaintiffs such

6  that U.S. Bank could foreclose or collect Plaintiffs' mortgage payments, and a final

7  judgment granting Plaintiffs quiet title in the Property.

## IV.   THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN THAT CONVEYED NO INTEREST TO U.S. BANK

10      30.   On January 11, 2011, Wells Fargo caused the Assignment to be recorded

11  with the County of Nevada.  The Assignment alleged that for "value received" Wells

12  Fargo granted, assigned, and transferred to U.S. Bank, all beneficial interest in the

13  Deed of Trust, together with "the Promissory Note secured by said Deed of Trust and

14  also all rights accrued or to accrue under said Deed of Trust."  The Assignment was

15  purportedly signed by "Robert Bourne," as the "Certifying Officer" of Wells Fargo.

16  Plaintiffs allege that no such transfer ever occurred, and that Robert Bourne is not the

17  "Certifying Officer" for Wells Fargo.  In reality, Robert Bourne is an employee for

18  Defendant First American.  *See* **Exhibit "A"**, which is a UTA eNews letter

19  identifying Mr. Bourne as a First American employee.

20      31.   Plaintiffs allege that Robert Bourne is what has come to be known as a

21  "robo-signer" – an individual who simply signs thousands of property record

22  documents without any legal or corporate authority whatsoever.[3]

---

[3] A recent "60-Minutes" television news segment reported on the epidemic of "phony" and "forged" documents used to evict homeowners, including the various different and forged signatures of "Linda Green" added to thousands of foreclosure documents filed in foreclosure proceedings all over the country, available at http://www.youtube.com/watch?v=UdeFyPC5MNI.  Ms. Green was interviewed by "60-Minutes" and admitted that their signature was forged by many DocX employees who were paid only $10 an hour and required to forge 4,000 documents a day.

32.    Robert Bourne is not the "Certifying Officer" for Wells Fargo and in fact, the Assignment was fraudulently executed without Wells Fargo's knowledge or authorization.

33.    Robert Bourne was never, in any manner whatsoever, appointed as a "Certifying Officer" by the Wells Fargo, giving him authority to "assign" Plaintiffs' Note and Mortgage on behalf of Wells Fargo.  For that reason, Robert Bourne never had, nor has, any corporate or legal authority from Wells Fargo, or the lender's successors and assigns, to execute the purported "Assignment".[4]  This was an intentional act undertaken by U.S. Bank and First American, done knowingly with the specific intent that the consequences of their actions be brought to fruition, which they have as evidenced by the instant debt collection activities.

34.    The "Assignment" is a fraudulent lien claim, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding & abetting the illegal, deceptive, and unlawful foreclosure and collection of Plaintiffs' mortgage payments.

35.    Plaintiffs further allege that any amount allegedly owed under the Note is subject to equitable offset by the damages owed to Plaintiffs from Defendants Wells Fargo, U.S. Bank, and/or First American.

36.    Attempting to "assign" or transfer a Deed of Trust by itself, as Defendants did here, does not allow enforcement of Plaintiffs' Note and Mortgage via a non-judicial foreclosure.  As alleged herein, Plaintiffs' Note was not properly negotiated, endorsed, and transferred to U.S. Bank, who seeks to cause its purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

---

[4] The instant case is analogous to *Kingman Holdings, LLC v. Citimortgage, Inc. and Mortgage Electronic Registration Systems, Inc.*, WL 1883829 (E.D. Tex. 2011) ("*Kingman*"), where the Court denied a Motion to Dismiss with similar causes of action as those that are pled here on the basis that the Plaintiffs had adequately challenged the signatory's alleged title as "Vice President" of MERS.  The *Kingman* court held that the Plaintiffs had adequately pled that the assignment executed by Nate Blackstun as "Vice President" on behalf of MERS, was void because Blackstun was not actually appointed by MERS to be its Vice President.

37.    California Commercial Code § 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418.   A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

38.    On information and belief, none of the Defendants were/are present holders in due course of Plaintiffs' Note such that they can enforce Plaintiffs' obligation and demand mortgage payments.

39.    On information and belief, U.S. Bank was/is not a nonholder in possession of Plaintiffs' Note who has rights of the holder.

40.    If there is a holder in due course of Plaintiffs' Note at issue, pursuant to California Commercial Code § 3301, et seq. and/or the PSA it is the entity that can establish a pecuniary, legal, and equitable interest in the Property, and provide an unbroken chain of title to Plaintiffs' Note and Mortgage.[5]

41.    On information and belief, none of the Defendants were/are entitled to enforce Plaintiffs' Note pursuant to § 3309 or subdivision (d) of § 3418.

42.    Plaintiffs do *not* allege that First American, U.S. Bank, or Wells Fargo must be in "physical possession" or "hold" Plaintiffs' Note to foreclose on their home – a requirement that has been rejected in California.[6]   Rather, Plaintiffs allege that,

---

[5] Specifically, Plaintiffs' information and belief is based on the testimony of Linda DeMartini in *In Re Kemp*, Case No. 08-18700-JHW, (Bankr. D. N.J. November 16, 2010) (for publication), exposes the shoddy handling of the mortgage note and deed of trust of securitized mortgages required to perfect "holder in due course" status.  In that case Linda DeMartini, a 10-year litigation manager for Countrywide described how Countrywide failed to adhere to the most rudimentary of securitization procedures, such as transferring the original promissory note to the trusts that had purchased the loans, as required under the pooling and servicing agreement.  Ms. DeMartini testified that it was standard practice for Countrywide to hold onto the original mortgage notes, which were stored in Simi Valley, California, despite securitization contracts that require the notes be physically transferred to sponsors, trustees or custodians.

[6] *Chilton v. Federal Nat. Mortgage Assn.*, 2009 WL 5197869 (E.D. Cal.) (holding that possession of the original note is not a requirement for initiating foreclosure).  Plaintiffs do not allege that Defendants need to be in

VERIFIED COMPLAINT                                                                      -13-

prior to demanding mortgage payments from Ms. Vogan and Mr. Traupel and recording the Notice of Default, none of the Defendants or Doe Defendants had, nor presently have, a secured or unsecured legal, equitable, or pecuniary interest in Plaintiffs' Note and/or Deed of Trust as required under California law – irrespective of who is actually in physical possession of Ms. Vogan and Mr. Traupel's Note.

43.     Plaintiffs allege that, on information and belief, U.S. Bank fraudulently enforced a debt obligation in which they had no pecuniary, equitable or legal interest. U.S. Bank's conduct is part of a fraudulent debt collection scheme.

## V.   **THE FABRICATED SUBSTITUTION OF TRUSTEE IS A FRAUDULENT DOCUMENT THAT CONVEYED NO LEGAL AUTHORITY TO FIRST AMERICAN TO ACT AS THE FORECLOSING TRUSTEE**

44.     On January 7, 2011, Wells Fargo caused a document purporting to be a Substitution of Trustee ("Substitution") to be recorded with the County of Nevada. The Substitution alleged that "the present Beneficiary under said Deed of Trust...hereby substitute First American Trustee Servicing Solutions... as Trustee under said Deed of Trust."  The Substitution was purportedly signed by "Chet Sconyers," as a "Certifying Officer" of Wells Fargo.  Plaintiffs allege that no such transfer ever occurred, and that Chet Sconyers is not a "Certifying Officer" for Wells Fargo.

45.     Provision 24 of the Deed governs the Substitution of Trustee.  It provides in relevant part:

> "**Lender**, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument **executed and acknowledged by Lender**...This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution."

physical possession of the "original note" in order to initiate foreclosure, but rather that Defendants must demonstrate that they own the subject mortgage loan in order to collect payment and foreclose – whether by presenting the original note or a copy of the original.

VERIFIED COMPLAINT                                                                                    -14-

46.    In violation of Provision 24, and Cal. Civ. Code § 2934a, the foreclosing party failed to file a valid Substitution of Trustee, substituting First American as the foreclosing trustee.  Plaintiffs allege the recorded Substitution was invalid because Wells Fargo was not the current "Lender" at the time of the execution the Substitution.

47.    Wells Fargo and/or First American recorded a Substitution of Trustee claiming that as the present beneficiary, Wells Fargo desired to substitute First American in as the trustee.  Plaintiffs allege that no such substitution occurred.

48.    Plaintiffs allege that Chet Sconyers is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.[7]

49.    Chet Sconyers is not a "Certifying Officer" for Wells Fargo and in-fact, the Substitution was fraudulently signed without Wells Fargo's knowledge or authorization.

50.    Chet Sconyers was never, in any manner whatsoever, appointed as a "Certifying Officer" by Wells Fargo, and thus giving him no corporate or legal authority from Wells Fargo, or the lender's successors and assigns, to execute the purported "Substitution".  This was an intentional act undertaken by U.S. Bank and/or First American, done knowingly with the specific intent that the consequences of their actions be brought to fruition, which they have as evidenced by the instant debt collection activities.

51.    The "Substitution" is a fraudulent document, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding

---

[7] A recent "60-Minutes" television news segment reported on the epidemic of "phony" and "forged" documents used to evict homeowners, including the various different and forged signatures of "Linda Green" added to thousands of foreclosure documents filed in foreclosure proceedings all over the country, available at http://www.youtube.com/watch?v=UdeFyPC5MNI.  Ms. Green was interviewed by "60-Minutes" and admitted that their signature was forged by many DocX employees who were paid only $10 an hour and required to forge 4,000 documents a day.

1  & abetting the illegal, deceptive, and unlawful collection and attempts to collect
2  Plaintiffs' mortgage payments.

3       52.    Attempting to "substitute" First American under said Deed of Trust, as
4  Defendants did here, does not allow First American to act as the trustee for Plaintiffs'
5  Note and Mortgage.

6  ## VI.    PLAINTIFFS' OFFERS TO TENDER

7       53.    Plaintiffs initiated loan modification negotiation efforts with Wells Home
8  in August 2010, after experiencing unforeseen financial hardship.  Plaintiffs were
9  willing to tender unconditionally but needed the monthly payments restructured to
10  reflect the downturn in their monthly gross income.  Plaintiffs believed their lender
11  would be willing to avoid a foreclosure since Wells Home told them to stop making
12  payments and to send documents so that they could review Plaintiffs' for a loan
13  modification.  At the time, Plaintiffs relied on the representations made by Defendants
14  that Wells Fargo was their true creditor with the power to collect payment and modify
15  their loan.  After months of negotiation, follow up phone calls, and resubmitting
16  documents many times over, Ms. Vogan and Mr. Traupel were denied the opportunity
17  to tender.  Wells Home never told Plaintiffs why they were denied a loan
18  modification.  In fact, several agents at Wells Home relayed to Plaintiffs that they did
19  not understand as to why they did not qualify for a loan modification because with
20  their calculations Plaintiffs' should have qualified.  Plaintiffs attended a loan
21  modification workshop that Wells Fargo held in Sacramento.  At this workshop,
22  Plaintiffs' found out that their loan was purportedly owned by a mortgage backed
23  security trust and that mortgage backed security trusts did not participate in the Home
24  Affordable Modification Program and rarely issued loan modifications.  Since then,
25  Plaintiffs have learned that none of the Defendants had or have any legal or corporate
26  authority to collect on their loan, service the loan, or proceed with a lawful
27  foreclosure.

28

54.     In an effort to verify and validate their debt, Ms. Vogan and Mr. Traupel sent a Qualified Written Request letter pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e), in which they requested that the purported servicer (Wells Home) provide, among other things, a copy of their endorsed Note.  12 U.S.C. § 2605(e) requires that the servicer provide this information and respond to a written request within 20 days of receipt.  Wells Home responded to Plaintiffs' request but attached a Note with no endorsements to U.S. Bank.  *See* **Exhibit "B"**, Wells Home response to Plaintiffs' Qualified Written Request.  First American also responded to Plaintiffs' Qualified Written Request with their Deed of Trust with no endorsements to U.S. Bank. *See* **Exhibit "C"**, First American's response to Plaintiffs' Qualified Written Request.

## VII.   PLAINTIFFS HAVE SUFFERED, AND CONTINUE TO SUFFER, SIGNIFICANT MONETARY, LEGAL, AND EQUITABLE DAMAGE

55.     The conduct described above of Wells Fargo, U.S. Bank, and/or First American, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, said Defendants foreclosed on Plaintiffs' home.

56.     U.S. Bank and Wells Fargo engaged and are engaging in a pattern and practice of defrauding Plaintiffs, in that, on information and belief, during the entire life of the mortgage loan, U.S. Bank and Wells Fargo failed to properly credit payments made; incorrectly calculated interest on the accounts; and failed to accurately debit fees.

57.     On information and belief, at all times material, U.S. Bank and Wells Fargo had and have actual knowledge that Plaintiffs' accounts were not accurate, but that Plaintiffs would make further payments based on Defendants' inaccurate accounts.

58.     On information and belief, Plaintiffs made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiffs' accounts.

59.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs overpaid in interest.

60.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs' credit and credit score have been severely damaged.  Specifically, because of the derogatory credit reporting on their credit report by U.S. Bank, Wells Fargo and First American.  Ms. Vogan and Mr. Traupel are unable to refinance out their present loan and save their property from a fraudulent foreclosure.

61.     As a direct and proximate result of the actions of the Defendants set forth above, the title to Plaintiffs' home has been slandered, clouded, and its salability has been rendered unmarketable.

62.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs do not know who the current beneficiary of their Note and Mortgage actually is, such that they are now subject to double financial jeopardy.

63.     As a direct and proximate result of the actions of the Defendants set forth above, multiple parties can potentially claim an interest in the subject loan.

64.     The conduct of Wells Fargo, U.S. Bank, and/or First American and one or more of the Doe Defendants have led to the imminent loss of Plaintiffs' home and to pecuniary damages.  The pecuniary damages include, but are not limited to, the costs of removing the cloud from their title and attorneys' fees, in an amount to be proven at trial.

65.     The conduct of Wells Fargo, U.S. Bank, and/or First American and one or more of the Doe Defendants' conduct was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiffs' Note and Deed of Trust, yet still wrongfully recorded the fabricated documents so as to illegally foreclose, slander the Plaintiffs' credit and title to the Property, and make said title unmarketable.

66.     The title to Plaintiffs' Property has been rendered unmarketable and unsalable because of the possibility of multiple claims being made against their

Property.  If the Notice of Default, Notice of Trustee's Sale and Substitution of Trustee are not cancelled, Plaintiffs will be incurably prejudiced.  Plaintiffs will be denied the opportunity to identify their true and current creditor/lender/beneficiary and exercise their statutory right to cure any alleged default.

67.     Plaintiffs have offered to tender and are ready, willing, and able to unconditionally tender their obligation.

## FIRST CAUSE OF ACTION - DECLARATORY RELIEF
### [Against All Defendants and Doe Defendants]

68.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

69.     Plaintiffs allege that U.S. Bank and/or Wells Fargo do not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment has no value since the Deed of Trust is wholly unsecured.

70.     Defendants allege that Plaintiffs' Note and Deed of Trust cannot be determined to be unsecured and that they have an enforceable interest in, and lien against, the Plaintiffs' Note, Deed of Trust, and Property.

71.     Thus, the competing allegations made by Plaintiffs, above, establish that a real and present controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

72.     Accordingly, Plaintiffs request that the court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiffs' Note, Deed of Trust, or the Property which authorized them, in fact or as a matter of law, to foreclose or collect Plaintiffs' mortgage payments.

73.     As described above, Plaintiffs will be denied the opportunity to identify their true and current creditor/lender and exercise their right to cure any alleged default.  They will be denied the right to conduct discovery and have U.S. Bank's

1   claim verified by a custodian of records who has personal knowledge of the loan and

2   all transactions related to it.  Plaintiffs will also be denied the opportunity to discover

3   the true amount they still owe, if any amount still exists.

4          74.    It is necessary that the Court declare the actual rights and obligations of

5   the parties and make a determination as to whether U.S. Bank's claim against

6   Plaintiffs is enforceable and whether it is secured or unsecured by any right, title, or

7   interest in Plaintiffs' home.

8          75.    Furthermore, the conduct of Wells Fargo, U.S. Bank, and/or First

9   American and one or more of the Doe Defendants, and each of them, as herein

10  described, was so malicious and contemptible that it would be looked down upon and

11  despised by ordinary people.  Plaintiffs are therefore entitled to punitive damages in

12  an amount appropriate to punish Defendants and to deter others from engaging in

13  similar conduct.

## SECOND CAUSE OF ACTION- FOR NEGLIGENCE

### [Against U.S. Bank, Wells Fargo, First American and Doe Defendants]

16         76.    Plaintiffs hereby incorporate by reference each and every one of the

17  preceding paragraphs as if the same were fully set forth herein.

18         77.    At all times relevant herein, First American was acting as purported

19  agents for Wells Fargo and U.S. Bank.  Defendants are jointly and severally liable for

20  Wells Fargo, U.S. Bank and/or First American's negligent and reckless conduct.

21         78.    First American is the common agent for Plaintiffs and the purported

22  beneficiary of the Note and Mortgage.[8]

23         79.    At all times relevant herein First American was acting as the trustee

24  under the Deed of Trust.

---

[8] *Pro Value Properties, Inc. v. First American Loan Service Corp.*, 170 Cal.App.4th 579 (2009).  The scope and nature of the trustee's duties in a non-judicial foreclosure, "are exclusively defined by the deed of trust and the governing statutes." *Id.* at 583.

80.   As the purported trustee of the Deed of Trust, First American owes Plaintiffs a duty to exercise reasonable care and skill to follow California foreclosure laws.  These duties are statutorily prescribed by Cal. Civ. Code § 2924, et seq.

81.   As the purported trustee of the Deed of Trust, First American owes Plaintiffs a duty to exercise reasonable care and skill as prescribed by the Deed of Trust.

82.   First American breached its duty of care owed to Plaintiffs when they failed to carry out foreclosure proceedings according to the strict requirements of Cal. Civ. Code § 2924 et seq.  Specifically, First American breached their duty by fabricating documents, allowing their employees and/or their agents to execute documents attesting to facts to which they knew they had no personal knowledge, and misrepresenting to Plaintiffs that the true and correct beneficiary was exercising the power of sale.  Not only can First American be found negligent for this egregious conduct, but this breach of the duty of care is imputed to its principal(s), U.S. Bank, Wells Fargo, or whoever they may be.

83.   U.S. Bank as the purported current pecuniary beneficiary of Plaintiffs' Note and Mortgage owes a duty of care to Plaintiffs to discharge its contractual duties under the Deed of Trust with reasonable care.[9]  U.S. Bank breached its duty of care to Plaintiffs when it aided and abetted First American in misrepresenting that they were the current pecuniary beneficiary and directed First American to declare a default and initiate foreclosure.[10]

84.   U.S. Bank is vicariously liable for the illegal, fraudulent and negligent conduct of its purported agents, First American.

85.   Wells Fargo as the purported mortgage servicer, has a duty of care to Plaintiffs to exercise reasonable care to follow California law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any

---

[9] *Das v. Bank of America. N.A. (2010) 186 Cal. App. 4th 727,740*

[10] *Id.* (Citing to *Casey v. Deutsche, Nat. Assn.* (2005) 127 Cal.App. 4th 1138, 1144-45

1  action against Plaintiffs that they did not have the legal authority to do.  This includes
2  not collecting or demanding mortgage payments, or foreclosing, when there is no right
3  to enforce the obligation on Defendants' behalf.

4       86.    As an actual and proximate cause of the reckless breach of duty of care,
5  utter carelessness, and blatant fraud of the Defendants as set forth above, Plaintiffs
6  have suffered (and continue to suffer) damages and harm.  Chain of title to Plaintiffs'
7  Property has been rendered unmarketable and fatally defective, has caused Plaintiffs
8  to lose saleable title to the Subject Property and as a result Plaintiffs have lost their
9  home to a wrongful foreclosure.

10       87.    As an actual and proximate cause of the breach of duty of care and
11  carelessness of the Defendants as set forth above, Plaintiffs suffered, and continue to
12  suffer, general and special damages in an amount to be determined at trial, severe
13  emotional distress, including attorneys' fees and costs of bringing suit to challenge
14  said Defendants' right to enforce their debt obligation against them.

15       **THIRD CAUSE OF ACTION – QUASI CONTRACT**
16       **[Against Wells Fargo, U.S. Bank and Doe Defendants]**

17       88.    Plaintiffs hereby incorporate by reference each and every one of the
18  preceding paragraphs as if the same were fully set forth herein.

19       89.    Wells Fargo demanded monthly mortgage payments from Plaintiffs and
20  continued to collect payments from Plaintiffs.  Plaintiffs reasonably relied upon U.S.
21  Bank's and/or Wells Fargo's assertion that it was entitled to payments.

22       90.    Wells Fargo knowingly accepted payments and retained them for its own
23  use knowing that Wells Fargo and/or U.S. Bank did not acquire an interest in
24  Plaintiffs' Note, such that they could accept or keep Plaintiffs' payments.  It would be
25  inequitable for Wells Fargo to retain the payments it received from Plaintiffs which
26  they did not have legal authority to collect.  The equitable remedy of restitution when
27  unjust enrichment has occurred is an obligation created by the law without regard to

28

1 | the intention of the parties, and is designed to restore the aggrieved party to his or her

2 | former position by return of the thing or its equivalent in money.

3 |       91.    The Deed of Trust states in the "Full Performance" section that: "If

4 | Trustor pays all the indebtedness when due, and otherwise performs all the obligations

5 | imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to

6 | Trustee a request for full reconveyance and shall execute and deliver to Trustor

7 | suitable statements of termination of any financing statement on file evidencing

8 | Lender's security interest in the Rents and the Personal Property."  The obligations to

9 | Wells Fargo under the Deed of Trust were fulfilled when Wells Fargo received the

10 | balance on the Note as proceeds of sale of Plaintiffs' Note and Mortgage to a

11 | presently unknown entity.  Wells Fargo has been unjustly enriched by collecting

12 | monthly payments from Plaintiffs when it has no interest their Note.

13 |       92.    Plaintiffs seek restitution for any payments they made to Wells Fargo that

14 | were not paid to the lender or beneficiary, if any.

## FOURTH CAUSE OF ACTION - VIOLATION OF

## BUS. & PROF. CODE § 17200, ET SEQ.

**[Against U.S. Bank, Wells Fargo, First American and Doe Defendants]**

18 |     93.    Plaintiffs hereby incorporate by reference each and every one of the

19 | preceding paragraphs as if the same were fully set forth herein.

20 |       94.    Defendants' conduct, for the reasons stated herein, is in direct violation

21 | of California Civil Code §§ 2924, et seq.

22 |       95.    Defendants' conduct, for the reasons stated herein, is in direct violation

23 | of California Civil Code §§ 2924f(c)(2) and 2932.5.

24 |       96.    Cal. Bus & Prof. Code § 17200, et seq., prohibits acts of unfair

25 | competition, which means and includes any unlawful, unfair or fraudulent business act

26 | and conduct which is likely to deceive and is fraudulent in nature.  As more fully

27 | described above, Defendants' acts and practices are unlawful, fraudulent, and likely to

28 | deceive.  This conduct is ongoing and continues to this date.

97.   Defendants engage in unlawful,[11] fraudulent and deceptive business practices with respect to mortgage loan servicing, assignment of note and deed of trust, and related matters by, among other things:

(a)   Executing and recording false and misleading documents;[12]

(b)   Executing and recording documents without the legal authority to do so;

(c)   Failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code § 1095;

(d)   Failing to record Powers of Attorney in connection with other recorded documents in violation of Cal. Civ. Code § 2933;

(e)   Violating the Security First Rule;

(f)   Demanding and accepting payments for debts that were non-existent;

(g)   Reporting payments as late to credit bureaus without the legal right or authority to do so;

(h)   Acting as a beneficiary without the legal authority to do so, and;

(i)   Other deceptive business practices as described herein.

98.   Plaintiffs allege that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws, including § 131(g) 15 U.S.C.§ 1641, Cal. Penal Code 532(f)(a)(4), and regulations

---

[11] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Saudners v. Superior court* (1994) 27 CA4th 832; *Hewlett v. Squaw Valley* (1997) 54 CA4th 499.

[12] Defendants' recording of the fabricated assignment of deed of trust violates Cal. Penal Code §532(f)(a)(4), which prohibits any person from filing of a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate that Defendants have committed mortgage fraud by filing the assignment of deed of trust with the county recorder's office with the knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

and said predicate acts are therefore per se violations of Cal. Bus. & Prof. Code § 17200, et seq.

99.   Plaintiffs allege that Defendants' misconduct, as alleged herein, gave, and have given, Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

100.   The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiffs.

101.   By reason of the foregoing, Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiffs and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204. Additionally, Plaintiffs are therefore entitled to injunctive relief and attorneys' fees as available under Cal. Bus & Prof. Code § 17200 and related sections.

102.   As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiffs have been injured in that a cloud has been placed upon title to Plaintiffs' Property and Defendants, have failed to remove this cloud from Plaintiffs' title.

103.   Plaintiffs are entitled to an order compelling U.S. Bank, Wells Fargo, First American and any other defendants claiming an interest in and to the Property to take any and all actions necessary to remove the cloud they have placed upon their title and an order enjoining such Defendants from taking such actions again in the future.

## FIFTH CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1641(g)
### [Against U.S. Bank and Doe Defendants]

104.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

105.   Plaintiffs reside in the Subject Property and it is their principal residence.

106.   The new subsection (g) added to § 131 of TILA by § 404 of **The Helping Families Save Their Homes Act of 2009** states:

> (g) NOTICE OF NEW CREDITOR-
>
> > (1)   IN GENERAL. –In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-
> >
> > (A) the identity, address, telephone number of the new creditor;
> >
> > (B) the date of transfer;
> >
> > (C) how to reach an agent or party having authority to act on behalf of the new creditor;
> >
> > (D) the location of the place where transfer of ownership of the debt is recorded; and
> >
> > (E) any other relevant information regarding the new creditor."
>
> Failure to comply with the requirements of this new subsection 131(g) of TILA may result in civil liability for actual damages, legal fees and statutory damages under § 130(a) of TILA.

107.   Irrespective of who effected the recordation of the "Assignment" recorded on January 11, 2011, the purported transfer of ownership of Plaintiffs' Note occurred after May 2009.

108.   Plaintiffs allege that Section 131(g) of TILA applies to U.S. Bank as purported and alleged assignee of Plaintiffs' loan.  Plaintiffs are unable to determine which Defendant is the purported beneficiary of Plaintiffs' Note and Mortgage.

109.   Plaintiffs allege that § 131(g) of TILA applies to U.S. Bank as it was purportedly assigned Plaintiffs' loan on or about January 2011.

110.   Section 131(g) of TILA requires U.S. Bank to perform and comply with the requirements of the statute, otherwise face statutory and civil penalties and damages.

111.   U.S. Bank purports to be a **creditor** under the alleged "Assignment of Deed of Trust" and is alleged to have violated 15 U.S.C. § 1641(g).

112.   The trustee *under the Deed of Trust* is allegedly First American, NOT U.S. Bank.

113.   Here, U.S. Bank is acting as the purported *Trustee for a securitized trust pool* named "WFMBS 2005-AR12." As such, U.S. Bank claims to be the actual secured creditor, *__not__* the foreclosing trustee under the Deed of Trust.

114.   While confusing, this is different than the "trustee" under the Deed of Trust, the entity entitled to exercise the power of sale provision in the Deed of Trust.

115.   The fact that U.S. Bank is being sued as, "U.S. Bank, N.A., as Trustee" is of no consequence in relation to its alleged role as the new creditor seeking to collect payment from Plaintiff.

116.   Defendant U.S. Bank alleges that it is the purported owner of Plaintiffs' debt. Plaintiffs dispute the validity of U.S. Bank's claim, for the reasons stated herein.

117.   U.S. Bank did not provide Plaintiffs with written notice within 30 days after the date on which it was allegedly assigned the mortgage.

118.   Ms. Vogan and Mr. Traupel did not receive notice indicating the exact date of the purported assignment of the interest in his Note, as required by § 131(g)(1)(B).

119.   Ms. Vogan and Mr. Traupel did not receive notice indicating how to reach an agent or party having authority to act on U.S. Bank's behalf, as required by § 131(g)(1)(C).

120.   Plaintiffs did not receive notice indicating the location of the place where transfer of ownership of the debt is recorded, as required by § 131(g)(1)(D).

121.   Ms. Vogan and Mr. Traupel did not receive notice indicating any other relevant information regarding the new creditor, purportedly U.S. Bank, as required by § 131(g)(1)(E).

122.   As a result of U.S. Bank's violations, Plaintiffs' home was foreclosed and they have had to pay attorneys' fees to defend against an eviction and fraudulent foreclosure, including filing fees and costs, both in amounts to proven at trial.

123.   Plaintiffs did not discover that U.S. Bank had violated U.S.C. §1641, et seq. until on or about April 2011, when they retained counsel and discovered that their mortgage had allegedly been "assigned" to U.S. Bank.  They could not have with reasonable diligence discovered such facts because they did not receive a copy of the "assignment" as required by law.  Therefore, the statute of limitations on their claims against U.S. Bank and other Doe Defendants was equitably tolled and did not begin to run until on or around April 2011.

124.   Thus, U.S. Bank violated § 131(g) 15 U.S.C. § 1641 and is subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages. *See* §131 (g) 15 U.S.C. § 1640.  The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the costs of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on her property title, and attorneys' fees and costs, in an amount to be proven at trial, but in excess of $75,000.00.

125.   As a result of U.S. Bank's violation, Plaintiffs' home has fallen into foreclosure on and they have suffered actual damages in that they are in the process of being foreclosed upon.  Further, Ms. Vogan and Mr. Traupel have had to pay attorneys' fees and filing fees and costs, both in amounts to proven at trial.

126.   Plaintiffs are entitled to a private right of action to enforce § 131(g) U.S.C. § 1641, et seq.

### SIXTH CAUSE OF ACTION - ACCOUNTING

**[Against Wells Fargo, U.S. Bank and Doe Defendants]**

127.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

128.   U.S. Bank with Wells Home as its purported agent, have held themselves out to be Plaintiffs' creditor and mortgage servicer.  As a result of this purported relationship with Plaintiffs, said Defendants have a fiduciary duty to Plaintiffs to properly account for Plaintiffs' monies paid to them.

129.   As a result of the aforementioned fraudulent conduct, Plaintiffs paid Wells Fargo their mortgage payments for a period of approximately twelve months.  However, for the reasons stated herein, none of this money was actually owed to U.S. Bank or Wells Home.  For that reason, these monies are due to be returned to Plaintiffs in full.

130.   The amount of the money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.  Plaintiffs are informed and believe and thereon allege that the amount due to them exceeds $75,000.00.

## SEVENTH CAUSE OF ACTION - CONSTRUCTIVE TRUST

### [Against Wells Fargo, U.S. Bank, and Doe Defendants]

131.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

132.   As a proximate cause of the Defendants fraudulent misrepresentations and otherwise wrongful conduct as alleged herein, Plaintiffs' home has been foreclosed upon.  Plaintiffs also stand to lose all of the monies paid to parties that were not entitled to them.

133.   By reason of the fraudulent and otherwise wrongful manner in which the Defendants obtained their alleged right, title and interest in and to the Subject Property, Defendants, and each of them, have no legal, equitable, or pecuniary right, claim or interest therein, but instead, Defendants and each of them are involuntary trustees holding said property and profits there from in constructive trust for Plaintiffs, with the duty to convey the same to Plaintiffs forthwith.

## EIGTH CAUSE OF ACTION – WRONGFUL FORECLOSURE AND TO SET ASIDE TRUSTEE'S SALE

**[Against Wells Fargo, U.S. Bank, First American and Doe Defendants]**

134.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

135.   Plaintiffs offered to tender their obligation prior to the Foreclosure Sale and are ready, willing and able to tender their obligation.

136.   Upon information and belief, U.S. Bank was the purported foreclosing beneficiary upon the Property.  U.S. Bank was the entity which exercised the power of sale within the Deed.

137.   As set forth above, since U.S. Bank's purported status as beneficiary is void *ab initio*, U.S. Bank did not have the authority to exercise the power of sale within the Deed, and First American could not initiate foreclosure based upon defaults known to U.S. Bank.  Therefore, the entire foreclosure is void *ab initio*.

138.   Currently, Plaintiffs are at risk of having to relocate from the Property and lose their rights in that property due to the actions of U.S. Bank, Wells Fargo and/or First American one or more of the Doe defendants, and each of them.

139.   Foreclosure was initiated by Defendants U.S. Bank and/or First American, without privilege and with malice, as the defendants knew that a "default" had never occurred.  As stated, U.S. Bank, was not owed any money, First American was not the trustee, and U.S. Bank had no pecuniary interest in the loan, and was not a beneficiary of the Note and Mortgage.  Therefore, despite the fact that said Defendants knew no "default" had occurred, they proceeded with the foreclosure sale.

140.   Defendants falsely represented to Ms. Vogan and Mr. Traupel that if they did not pay Defendants, Plaintiffs' home would be sold at a public auction.  Such actions are malicious and fraudulent.  In fact, any sale that would have taken place would have been ***void***, for the reasons stated herein.

141.   Plaintiffs allege said Notice of Sale was false, void, and without privilege, for the reasons stated and discussed herein.

142.   Upon information and belief, Ms. Vogan and Mr. Traupel allege the Note and Mortgage as the same described above, was improperly pledged or sold to another party, and such sale was not done in accordance with Article 3 or Article 9 of the California Commercial Code and was therefore improper and failed to confer any legally cognizable rights in any party claiming to be a beneficiary of the note and mortgage.

143.   No true sale of the Note and Mortgage, as required per securitization documents, ever actually took place between any of the intermediaries in the securitization chain.  Thus, Ms. Vogan and Mr. Traupel are open to double or triple financial jeopardy from unknown claimants.

144.   At no point in time did the purported original beneficiary of the Deed of Trust assign his, her, or its interest in the property to any purported holder in due course of the Note or Mortgage.

145.   In that the U.S. Bank had no interest that was assigned to them they could not proceed with a foreclosure.

146.   On information and belief, at the time defendants U.S. Bank and/or First American commenced the foreclosure proceedings, they had no legal or equitable interest in the Note and Mortgage, and thus no amount was owed from Ms. Vogan and Mr. Traupel to U.S. Bank and/or First American, or the beneficiary of the Promissory Note and Deed of Trust.

147.   In addition to U.S. Bank, First American and/or one or more of the Doe defendants never having the legal authority to foreclose, the foreclosure is *void* and cancelled as set forth above due to the security being waived by U.S. Bank and/or one or more of the Doe defendants extracting payments from Plaintiffs.

148.   In addition, the foreclosure sale is *void* because First American and Chet Sconyers engaged in fraud to fabricate a purported "Substitution of Trustee" to

1    "substitute" themselves into the Deed of Trust.  As a result of the void "substitution"

2    the sale was conducted by an entity that was not the duly appointed trustee.

3       149.   Upon information and belief, a void foreclosure is void against all

4    parties, including bona fide purchasers for value.

5       150.   The estate of interest claimed in the Property by Defendants, and each of

6    them, under the trustee's deed is a cloud on Plaintiffs' title to the Property in that it

7    restricts Plaintiffs' right to the use and enjoyment of the Property, hinders Plaintiffs'

8    right to unrestricted alienation of the Property.  If the trustee's deed is not delivered

9    and cancelled, serious injury will result to Plaintiffs.

10      151.   As a proximate result of Defendants' negligent or reckless conduct,

11    Plaintiffs' credit has been impaired and they are threatened with the eminent loss of

12    their property.

13      152.   Accordingly, Plaintiffs hereby request this Court for an order holding the

14    Trustee's Sale is set-aside in that it was legally void and conducted without any right

15    or privilege by Wells Fargo, U.S. Bank, First American and/or one or more of the Doe

16    defendants, and any of the Defendants in this matter.

17      153.   Plaintiffs further allege that any amount allegedly owing under the Deed

18    is offset by the damages owed to him from defendants Wells Fargo, U.S. Bank and/or

19    First American.

20    **NINTH CAUSE OF ACTION – TO VOID OR CANCEL TRUSTEE'S**

21    **DEED UPON SALE**

22    **[Against U.S. Bank, First American and Doe Defendants]**

23      154.   Plaintiffs hereby incorporate by reference each and every one of the

24    preceding paragraphs as if the same were fully set forth herein.

25      155.   U.S. Bank and/or one or more of the Doe defendants, as the purported

26    foreclosing beneficiary, did not have the right to exercise the power of sale because

27    U.S. Bank and/or one or more of the Doe defendants' interest as beneficiary is void *ab*

28

1  *initio* as set forth above.  Therefore, any the trustee's deed is void *ab initio* since it is

2  the result of U.S. Bank's void acts of exercising the power of sale.

3      156.   First American was not the trustee since its status as trustee is void *ab*

4  *initio* as set forth above.  Therefore, First American did not have the legal authority to

5  conduct a trustee's sale upon the Property, and the Trustee's Sale is void *ab initio* as

6  well as the trustee's deed which was recorded as a result of such sale.

7      157.   Upon information and belief, a void foreclosure is void against all

8  parties, including bona fide purchasers for value.

9      158.   Plaintiffs detrimentally relied upon First American and/or one or more of

10  the Doe defendants, as agent for U.S. Bank, that U.S. Bank had the authority to

11  declare a default and had the authority to foreclose on Plaintiffs' property.  U.S. Bank,

12  First American and/or one or more of the Doe defendants foreclosed, resulting in

13  Plaintiffs' damage as set forth above.  Therefore the foreclosure sale is void *ab initio*.

14  Plaintiffs are therefore entitled to an order that the Trustee's Deed is void *ab initio* and

15  cancelling such Trustee's Deed.

16                **TENTH CAUSE OF ACTION - QUIET TITLE**

17  **[As Against U.S. Bank, Wells Fargo, and Doe Defendants claiming any interest in**

18  **the Subject Property]**

19      159.   Plaintiffs hereby incorporate by reference each and every one of the

20  preceding paragraphs as if the same were fully set forth herein.

21      160.   Plaintiffs have offered to tender their obligation and are ready, willing,

22  and able to tender their obligation.

23      161.   Plaintiffs allege that they are the owner of the Subject Property per the

24  Deed of Trust executed by Plaintiffs.

25      162.   The basis for Plaintiffs' interest in title lies in the Deed of Trust from

26  Defendant Wells Fargo, which grants the Subject Property to Plaintiffs, and which is

27  recorded in the Official Records of the County of Nevada.

28

163.   Plaintiffs are seeking to quiet title against the claims of Defendants as follows: some of the named Defendants are seeking to hold themselves out as the owners of legal title to the Subject Property, when in fact Plaintiffs has an interest in such properties held by Defendants, when Defendants have no right, title, interest, or estate in the Subject Property, and Plaintiffs' interest is adverse to Defendants' claim to ownership.

164.   Plaintiffs seek to quiet title as of August 4, 2011.

Plaintiffs therefore seeks judicial declaration that the title to the Subject Property is vested in Plaintiffs alone and that Defendants herein, and each of them, be declared to have no estate, right, title, or interest in the Subject Property and that said defendants, and each of them, be forever enjoined from asserting any estate, right, title, or interest in the Subject Property, adverse to Plaintiffs herein.

WHEREFORE, Plaintiffs prays as follows:

1.   For compensatory, special, and general damages in an amount according to proof at trial, but not less than $5,000,000.00, against all Defendants;

2.   For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3.   For an order deeming Plaintiffs' Promissory Note as unsecured;

4.   For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiffs' title to the Property, including the purported Notice of Default, Notice of Trustee's Sale, Substitution of Trustee, Trustee's Deed Upon Sale, and Assignment of Deed of Trust;

5.   For an order finding that Defendants have no legally cognizable rights as to Plaintiffs, the Property, Plaintiffs' Promissory Note, Plaintiffs' Deed of Trust, or any other matter based on contract or any of the documents prepared by Defendants, tendered to and executed by Plaintiffs;

6.   The Court issue an order restraining Defendants, their agents or employees from continuing or initiating any action against the Property and enjoining

Defendants, their agents or employees from doing so during the pendency in this matter;

      7.    For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiffs and returning the same to Plaintiffs with interest thereon at the statutory rate from the date the funds were first received from Plaintiffs;

      8.    For an order quieting title in favor of Plaintiffs;

      9.    For costs of suit incurred herein;

     10.    For reasonable attorneys' fees incurred;

     11.    For such other and further relief as the court may deem proper.

Dated:      August 4, 2011          PROSPER LAW GROUP, LLP

                                  By:    _____
                                       Gordon F. Dickson
                                       Deborah P. Gutierrez
                                        Attorneys for Plaintiffs,
                                        Billi Vogan and Harold Traupel

## VERIFICATION

I, Billi Vogan, am the Plaintiff in the above-entitled action. I have read the above Verified Complaint, and I have personal knowledge of the matters stated herein except as to those matters stated upon information or belief and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct as executed this ___ Day of August 2011, in the City of Penn Valley, County of Nevada.

By: _____
         Billi Vogan

I, Harold Traupel, am the Plaintiffsin the above-entitled action. I have read the above Verified Complaint, and I have personal knowledge of the matters stated herein except as to those matters stated upon information or belief and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct as executed this ___ Day of August 2011, in the City of Penn Valley, County of Nevada.

By: _____
         Harold Traupel

VERIFIED COMPLAINT                                                                    -36-

## **DEMAND FOR JURY TRIAL**

Plaintiffs Billi Vogan and Harold Traupel hereby demand a trial by jury on all claims.

Dated:      August 4, 2011                    PROSPER LAW GROUP, LLP


By: _____
Gordon F. Dickson
Deborah P. Gutierrez
Attorneys for Plaintiffs,
Billi Vogan and Harold Traupel